IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kerry Richards,                          :
                                         :
                    Petitioner           :
                                         :
          v.                             :   No. 2090 C.D. 2016
                                         :   Submitted: May 12, 2017
Unemployment Compensation                :
Board of Review,                         :
                                         :
                    Respondent           :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED:  October 6, 2017


          Kerry Richards (Claimant) petitions for review of the December 2,
2016 order of the Unemployment Compensation Board of Review (Board) that
reversed a referee's decision and held that Claimant is ineligible for unemployment
compensation benefits pursuant to Section 402(e) of the Unemployment
Compensation Law (Law).[1]  We affirm.

          Claimant began working for Penn State University (Employer) on
August 1, 1989.  She last worked as the full-time director of the Pesticide Education

_____

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.
§802(e).  Section 402(e) provides that an employee shall be ineligible for compensation for any
week in which her unemployment is due to her discharge from work for willful misconduct
connected with her work.

Program on July 29, 2016, when Employer discharged Claimant for alleged violations of at least nine of Employer's policies. Claimant filed a claim for unemployment compensation benefits, but the local service center found that Claimant had committed willful misconduct and denied benefits under Section 402(e). Claimant appealed.

A referee held a hearing on October 5, 2016.[2] Dr. Dennis Calvin, Employer's Associate Dean and Director of Extension and Claimant's direct supervisor, testified that in his position, he oversaw outreach programs such as the Pesticide Education Program. He stated that issues with Claimant first became apparent when the central finance department discovered an issue with a purchase and implemented an audit. Dr. Calvin testified that the audit revealed that Claimant violated several policies and procedures and the results of the audit served as the basis for Claimant's termination. Notes of Testimony (N.T.) at 8-10.

Dr. Calvin testified that Claimant failed to follow Employer's policies for selecting third party vendors when she hired Chazzbo Media. Chazzbo Media employed an individual who had retired from Employer's College of Agricultural Sciences, and Dr. Calvin stated that Claimant failed to follow proper procedure for hiring a retired employee when she engaged Chazzbo Media. Dr. Calvin testified that Claimant also hired an employee who split time between Chazzbo Media and the Pesticide Education Program such that the employee worked full-time, but circumvented employment rules that would have required that employee to receive benefits. N.T. at 10-11.

---

[2] Ruth Fleck, a Human Resources Specialist for Employer, testified to confirm the details of Claimant's employment with Employer. N.T. at 7. Erikka Runkle, Employer's Human Resources Strategic Partner, and Crystal Switalski, Employer's Human Resources Manager, also attended but did not offer testimony.

Dr. Calvin testified that an employee under Claimant's supervision improperly used an Employer-provided purchase card (P-card) to buy, with university funds, Louisiana State University (LSU) items as a gift for a departing intern, who also happened to be Claimant's stepson. Dr. Calvin stated that the items were also improperly recorded as a giveaway, which implied that university funds were used to purchase materials for marketing or public relations purposes relative to the Pesticide Education Program. He testified that Employer considered the use of university funds to make personal purchases to be theft. He further stated that the gift did not constitute a giveaway. N.T. at 11-13.

Dr. Calvin testified that Claimant violated Employer's policies governing hiring relatives on several occasions when she employed her husband on behalf of the program. In these instances, Dr. Calvin stated, Claimant set her husband's rate of pay and authorized the payment, which Employer's policy prohibited as it posed a conflict of interest. He also stated that Claimant violated Employer's policy regarding timecard reporting and accurate record keeping by having another employee complete a timecard for her husband when proper procedure required that employees complete and sign their own timecards. N.T. at 13-15.

Dr. Calvin further testified that Claimant violated Employer's policy regarding timecard reporting and accurate record keeping on several other occasions. He stated that Claimant instructed several interns, who worked as hourly wage employees, to submit an additional eight hours that had not been worked on their timecards. Dr. Calvin stated that this would also be considered theft. He testified that Claimant also instructed an employee who worked overtime to take

3

compensatory time, which is not permitted by Employer, rather than pay the employee overtime as required by Employer's policy. N.T. at 15-17.

Dr. Calvin testified that Claimant violated Employer's policy regarding the use of Employer's facilities by storing granite countertops for her personal use in a facility that Employer had leased for the Pesticide Education Program. Dr. Calvin stated that Employer also considered this to be theft. Additionally, Dr. Calvin testified that Claimant lost her P-card and an Employer-owned laptop and failed to follow proper procedure to report the lost items to Employer, though the items were ultimately recovered. N.T. at 17-18.

Allison Brumbaugh, a Financial Auditor for Employer, testified that a colleague requested that she run some P-Card transaction monitoring reports for the Pesticide Education Program. She explained that a grant from the Pennsylvania Department of Agriculture funded the Pesticide Education Program, but that Employer managed the grant and its policies regarding spending governed P-Card transactions. She stated that the LSU transaction, totaling over $100, for the purchase of a jersey was inappropriately described as a giveaway and prompted a full investigation for violation of Employer's policies. N.T. at 32, 40-41.

Brumbaugh testified that she spoke with Claimant and that Claimant admitted that she authorized the LSU purchase and that items were given as a gift to her stepson when he left his position as a wage employee for the Pesticide Education Program. Brumbaugh stated that several employees interviewed during the audit said that they collected personal funds to pay for the items, outside of Employer's P-Card or any university fund. She noted that the collected funds were likely used to pay for a lion statue and a meal, but no collected funds were used to reimburse Employer for the LSU jersey. N.T. at 32, 38.

4

With regards to Chazzbo Media, Brumbaugh testified that outside vendors required approval by Employer if purchases were over a certain threshold amount, which was met in this case. She stated that even if Chazzbo Media was an approved vendor by the Department of Agriculture, Claimant was still obligated to have the vendor approved by Employer and failed to do so. Brumbaugh also explained that this approval would have alerted Employer to the fact that Chazzbo Media employed one of Employer's retirees. She stated that the policy requiring approval to hire retirees covered not just Employer's departments, but also the hiring of independent contractors like Chazzbo Media. She explained that hiring a retiree in this manner, without proper approvals through appropriate channels, could impact the retiree's retirement benefits. Though the retired employee was not paid by Employer, but as an employee of Chazzbo Media, Brumbaugh stated that Employer's policy required Claimant to seek approval because she had actual knowledge that a retired employee was working on the project. N.T. at 33, 39-40.

Additionally, Brumbaugh testified that another employee was submitting timecards to Employer that reflected the maximum hours that a part-time employee is authorized to work and that Chazzbo Media was billing the Pesticide Education Program for any additional hours that employee worked. Brumbaugh explained that there was a chance that the employee should have been offered benefits through Employer but the time-splitting arrangement denied the employee the opportunity. N.T. at 34.

Brumbaugh further testified that the audit identified three instances where Claimant approved and submitted timecards for her husband's time. She stated that the timecards were submitted by Claimant with no evidence that her husband had authorized or signed the timecard, as required by Employer's policy as

evidence that he actually worked the time. Moreover, Brumbaugh stated that under Employer's policy, Claimant would not be permitted to supervise her husband; however, the three timecards demonstrated no supervisor approval other than Claimant's for her husband's time and rate of pay. N.T. at 34, 42.

Brumbaugh testified that Claimant authorized paid interns to add eight additional hours to their timecards. She stated that one of the interns confirmed to Brumbaugh in an interview that they were directed to do so by Claimant. Brumbaugh admitted that she did not recall asking the interns interviewed whether they had actually worked the extra hours they were instructed to include on their timecards. N.T. at 35, 39.

Brumbaugh testified that Claimant did not report that she had lost her Employer-issued laptop and P-Card in November until she was interviewed during the audit in January. Brumbaugh stated that Claimant only officially reported the loss subsequent to the interview. N.T. at 35.

Brumbaugh stated that Claimant had used an Employer vehicle to transport equipment to North Carolina and that the vehicle was stored in North Carolina for the duration of the time that the equipment was in use there. She explained that Claimant failed to follow Employer's policy that offsite storage of its vehicles should be approved and confirmed by risk management. Brumbaugh also testified that the audit revealed that Claimant stored granite countertops for her personal use in a facility leased by Employer on behalf of the Pesticide Education Program. N.T. at 36.

Claimant testified that she not only believed that Chazzbo Media's status as an approved vendor by the Department of Agriculture would be sufficient for approval by Employer, but that Chazzbo Media already was an approved vendor

6

because Employer's College of Health and Human Development had engaged Chazzbo Media's services several years earlier. Claimant further stated that she did not understand there to be any problem with the retiree's benefits from Employer as the result of that retiree's work on Chazzbo Media's project with the Pesticide Education Program. Claimant also testified that the other employee who split time between Chazzbo Media and the Pesticide Education Program was hired prior to the policy change that created an issue with his employment status. Claimant stated that she received paperwork regarding the new policy, but no training. N.T. at 42-43.

Claimant testified that she did not authorize the use of a P-Card to purchase gifts for her stepson when he left employment with the Pesticide Education Program. She stated that she expected that all gifts would be paid for with funds collected from employees in the office by the employee who coordinated the purchases. Claimant explained that she told that employee that she did not want to be involved in the process other than to contribute her fair share to the gift fund. Claimant testified that the first time that she became aware of the purchase was in an interview with Brumbaugh during the audit. N.T. at 44.

Claimant testified that during a November 2014 trip from a pesticide outreach program in Wilmington, Delaware to a meeting in Kennett Square, Pennsylvania, the bag that contained her Employer-issued laptop and P-Card fell out of the U-Haul vehicle she rented. Claimant stated that she called the Kennett Square police and Kennett Square road master to determine if the bag had been turned in. Claimant stated that afterwards, she received a phone call from a restricted number where a man stated that he had the bag and wanted to arrange its return but did not leave his name or contact information. Claimant testified that she reported the P-Card as lost to PNC Bank and that the following week her P-Card was identified by

7

Employer as one of several cards that had been compromised and so the P-Card was reissued. She stated that following the Christmas holiday, she spoke with one of Employer's IT professionals who subsequently sent Claimant information on how to report items as lost. Claimant testified that in June 2015, she received a phone call from a member of the education program in Wilmington who informed her that he was the person who found her bag and arranged to return the items. N.T. at 44-45.

Claimant acknowledged that she authorized interns to claim an additional eight hours on their timecards. She stated that she reviewed their work and realized that the scope of work completed could not have been done during the hours the interns had previously claimed and that she had witnessed times where the interns had worked through lunch. She explained that, as a result, she instructed them to add the extra hours to their timecards to more accurately reflect the time the interns had actually worked. N.T. at 45-46.

Claimant testified that the three instances where timesheets were submitted for her husband's time were emergency situations where the work needed to get done and she perceived it to be the most economical way to accomplish the task. In one case, she explained that she had an event in North Carolina and had just returned from medical leave and was not medically permitted to drive a car for the length of time it would take to complete the trip. She stated that she believed it would be more economical for her husband to drive the car because Employer would not have to pay for separate housing in addition to his normal compensation. Claimant testified that in another instance there was a significant water leak in the storage facility and her husband knew how to operate the equipment used to remove the water. Claimant stated that she engaged her husband to move some of the heavier

8

materials and clean up the flooding because the work needed to be done immediately. Claimant testified that she neither supervised her husband nor set his wage rate because that had already been determined by Employer when he was hired. N.T. at 46-47, 51-52.

In regards to storing her granite countertops in Employer's facilities, Claimant testified that when she returned from an outreach event, the countertops were unloaded with items from the event. She stated that the countertops took up approximately 10 square feet in a 1400 square foot facility and were stored in the facility for no more than six months. She testified that she did not understand Employer's policy against using non-public facilities for family events to include a prohibition on storing personal items in the facility. N.T. at 47-48.

Claimant admitted that she instructed an employee to take compensatory time rather than receive overtime payment because it had been the standard procedure for the Pesticide Education Program established by her predecessors. She stated that in order to facilitate the Pesticide Education Program's participation in the yearly Farm Show, staff were required to work overtime. She explained that the staff agreed to the arrangement and the employee in question was the only non-exempt staff member under the Fair Labor Standards Act.[3] Claimant testified that she did not realize that she was violating state and federal laws by granting a non-exempt employee compensatory time rather than overtime. N.T. at 48-49.

Claimant acknowledged that given Dr. Calvin's and Brumbaugh's explanations, she violated several of Employer's policies. However, she explained that she never intentionally or willfully violated Employer's policy, she merely

_____

[3] Act of June 25, 1938, c. 676 §1, 52 Stat. 1060, *as amended*, 29 U.S.C. §201-219. Overtime for non-exempt employees is governed by 29 U.S.C. §207(a).

misunderstood them. She stated that based on her understanding of Employer's policies, she did not believe that any of her actions amounted to theft. Claimant further elaborated that her understanding of Employer's policies was partly based on the examples of her predecessors and colleagues in other departments. Claimant testified that she did not seek approval for the decisions that she made because she did not believe approval was necessary. N.T. at 48-55.

The referee determined that although Employer provided competent and credible testimony establishing that the policies under which Claimant was discharged did exist and that Claimant knew or should have known about them, Employer failed to demonstrate that Claimant deliberately violated any of the policies. As such, the referee determined that Claimant was not ineligible for unemployment compensation benefits under Section 402(e). Employer appealed to the Board.

The Board made its own findings, which are summarized as follows. Claimant was or should have been aware of Employer's policies. Nevertheless, Claimant did not follow Employer's procedures for hiring a retired employee. Claimant hired a vendor that was not on Employer's approved list of vendors. Claimant hired an employee who split time between the vendor's and Employer's payroll such that he worked full time and, as a result, did not receive benefits as a full-time employee as he was entitled. Claimant requested that a subordinate purchase LSU gear on her P-Card as a gift for her stepson and listed the gift as a giveaway, which it was not. Claimant hired her husband as a subordinate employee in violation of Employer's procedures. Claimant, rather than her husband, filled out her husband's timecard in violation of Employer's timecard policy. Claimant set her husband's rate of pay and authorized his payment in violation of Employer's

10

policies. Claimant falsified payroll records by instructing her interns to put eight hours of additional time on their timecards. Claimant instructed an employee to take compensatory time instead of overtime in violation of Employer's policy that would have required the employee to be paid overtime. Claimant stored granite countertops in Employer's facility against Employer's policy. Claimant misplaced Employer's laptop and P-Card and did not report those items as missing in a timely manner as required by Employer's policy. Claimant stored Employer's vehicle off-site for a significant period of time without Employer's approval. Claimant did not have adequate justification for her actions. Board Findings of Fact Nos. 1-48.

The Board credited Employer's testimony and evidence and resolved the conflicts in testimony and evidence in favor of Employer. The Board determined that Employer met its burden and that Claimant failed to follow Employer's policies as they existed during her employment. The Board concluded that Claimant committed actions for which discharge was the natural result and violated standards of behavior without good cause. As a result, the Board reversed the referee's decision and held that Claimant was ineligible for unemployment compensation benefits pursuant to Section 402(e). On appeal to this Court,[4] Claimant argues that the Board erred in determining that she did not have good cause for her actions.

Although not defined in the Law, "willful misconduct is defined by the courts as: (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or, (4) negligence showing an intentional

---

[4] Our scope of review is limited to determining whether constitutional rights are violated, whether the adjudication is in accordance with the law and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Kirkwood v. Unemployment Compensation Board of Review,* 525 A.2d 841, 843-44 (Pa. Cmwlth. 1987).

11

disregard of the employer's interests or the employee's duties and obligations." *Johns v. Unemployment Compensation Board of Review,* 87 A.3d 1006, 1009 (Pa. Cmwlth.), *appeal denied,* 97 A.3d 746 (Pa. 2014). An employer bears the burden of proving that a claimant is ineligible for unemployment compensation due to willful misconduct. *Walsh v. Unemployment Compensation Board of Review,* 943 A.2d 363, 368 (Pa. Cmwlth. 2008). Where the allegation of willful misconduct is based on a violation of the employer's work rule, the employer must show the existence of a reasonable work rule and the claimant's violation of the rule. *Williams v. Unemployment Compensation Board of Review*, 926 A.2d 568, 571 (Pa. Cmwlth. 2007). Once the employer meets its burden, the burden shifts to the claimant to establish good cause for her conduct. *Chapman v. Unemployment Compensation Board of Review,* 20 A.3d 603, 607 (Pa. Cmwlth. 2011). A claimant who has been discharged for multiple reasons is disqualified from receiving benefits if even one of those reasons amounts to willful misconduct. *Anderson v. Unemployment Compensation Board of Review*, 485 A.2d 900, 902 (Pa. Cmwlth. 1985).

It is well settled that the Board is the ultimate factfinder in unemployment compensation cases, empowered to determine the credibility of witnesses and resolve conflicts in evidence. *Curran v. Unemployment Compensation Board of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000). The Board's findings are binding and conclusive on appeal if the record, when examined as a whole, is supported by substantial evidence. *Mathis v. Unemployment Compensation Board of Review*, 64 A.3d 293, 299 (Pa. Cmwlth. 2013). "Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Guthrie v. Unemployment Compensation Board of Review*,

738 A.2d 518, 521 (Pa. Cmwlth. 1999). Additionally, unchallenged findings are binding on appeal to this Court. *Paolucci v. Unemployment Compensation Board of Review*, 118 A.3d 1233, 1246 (Pa. Cmwlth. 2015). We view the record in the light most favorable to the party prevailing before the Board and afford that party the benefit of all reasonable inferences that can be drawn from the evidence to determine if substantial evidence exists. *Serrano v. Unemployment Compensation Board of Review*, 149 A.3d 435, 439 (Pa. Cmwlth. 2016).

Here, the Board credited Employer's testimony and other evidence showing that Claimant violated at least nine of Employer's policies. In her brief, Claimant merely reiterates the testimony presented before the referee, which the Board did not credit, as providing evidence of reasonable behavior and good cause. After careful review of the record, we find substantial evidence to support the Board's conclusion that Claimant violated standards of behavior without good cause.

Moreover, Claimant failed to present any evidence of good cause for hiring an employee who split time between Chazzbo Media and the Pesticide Education Program such that he worked full time, but was denied the benefits of a full-time employee. Nor did she present evidence of good cause for storing Employer's vehicle off-site for an extended period of time without Employer's approval. Claimant did not challenge the Board's findings in this regard in her appellate brief and, therefore, they are binding on appeal. These findings are sufficient to support a determination that Claimant is ineligible for unemployment compensation benefits under Section 402(e). *Anderson.*

Accordingly, we affirm the Board's order.

13

_____
MICHAEL H. WOJCIK, Judge


Judge Cohn Jubelirer did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kerry Richards, : 
                               :
                Petitioner : 
                               :
           v. : No. 2090 C.D. 2016
                               :
Unemployment Compensation : 
Board of Review, : 
                               :
             Respondent : 

O R D E R

AND NOW, this 6<u>th</u> day of <u>October</u>, 2017, the order of the Unemployment Compensation Board of Review, dated December 2, 2016, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge